TANGENT TECHNOLOGIES LLC,

*Plaintiff,*

v.

RENEW PLASTICS, LLC,

*Defendant*.

Civil Action No. _1:26-cv-1165_

**COMPLAINT FOR PATENT INFRINGEMENT**

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(A), Plaintiff Tangent Technologies LLC ("Tangent"), by and through its undersigned counsel, brings this action for patent infringement against Defendant RENEW Plastics, LLC ("RENEW"), and hereby alleges as follows:

### NATURE OF THE ACTION

1. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.,* including 35 U.S.C. § 271, which gives rise to the remedies specified under 35 U.S.C. §§ 281, 283-285, and 289.

### PARTIES

2. Tangent is a corporation organized and existing under the laws of Illinois with its principal place of business at 1001 Sullivan Road, Aurora, Illinois 60506.

3. Based on information and belief, RENEW is a company organized and existing under the laws of the State of Wisconsin with its principal place of business located at 110 Frontier Road, Luxemburg, Wisconsin 54217 and does business throughout the United States.

## JURISDICTION AND VENUE

4. This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.* This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

5. RENEW is subject to personal jurisdiction in this Court because (i) RENEW is a Wisconsin corporation and thus resides in Wisconsin; (ii) RENEW has purposefully availed itself of the privileges of conducting business in the State of Wisconsin and in the Eastern District of Wisconsin; (iii) RENEW has sought protection and benefit from the laws of the State of Wisconsin and is incorporated there; (iv) RENEW regularly conducts business within the State of Wisconsin and within the Eastern District of Wisconsin; and (v) Tangent's causes of action arise directly from RENEW's business contacts and other activities in the State of Wisconsin and in the Eastern District of Wisconsin.

6. Venue is proper pursuant to 28 U.S.C. § 1400(b) because RENEW resides in the Eastern District of Wisconsin based on its formation under the laws of Wisconsin and its principal place of business located in the Eastern District of Wisconsin.

## BACKGROUND

7. Tangent is a leading manufacturer of sustainable building materials, including polymer lumber. Tangent has built its business around innovation, developing advanced manufacturing processes and product designs that transform recycled materials into durable, weather-resistant, and environmentally conscious products suitable for residential, commercial, and structural applications.

8. Among Tangent's innovations is a distinctive polymer lumber design where the wood-grain can been seen throughout the body of the lumber. This innovation allows

2

Tangent's polymer lumber to be cut, shaped, and worked while still maintaining the appearance of natural wood.

9. Tangent's products can be used in a wide range of applications, including decking, furniture, woodworking, and other fabricated products where both performance and appearance are important. Even after cutting, the lumber continues to display a wood-grain pattern. Examples of this innovative polymer lumber developed by Tangent are shown below.



10. Tangent has invested significant time, resources, and expertise in researching, developing, manufacturing, marketing, advertising, and selling its innovative products.

### THE PATENTS-IN-SUIT

11. To protect the intellectual property arising from these investments, Tangent has obtained multiple patents directed to inventions related to polymer lumber, including U.S. Patent Nos. 10,981,350, 12,654,384, D819,234 and D819,235 (collectively, the "Patents-in-Suit").

12. U.S. Patent No. 10,981,350 (the "'350 Patent"), titled "WOOD-GRAINED POLYMER SUBSTRATE," was duly and legally issued by the United States Patent and Trademark Office on April 20, 2021. Tangent is the assignee and owner of all right, title, and interest in the '350 Patent, a copy of which is attached as Exhibit 1.

13. U.S. Patent No. 12,654,384 (the "'384 Patent"), titled "WOOD-GRAINED POLYMER SUBSTRATE," was duly and legally issued by the United States Patent and

3

Trademark Office on June 16, 2026. Tangent is the assignee and owner of all right, title, and interest in the '384 Patent, a copy of which is attached as Exhibit 2.

14. U.S. Patent No. D819,234 (the "'234 Patent"), titled "WOOD-GRAINED POLYMER BOARD," was duly and legally issued by the United States Patent and Trademark Office on May 29, 2018. Tangent is the assignee and owner of all right, title, and interest in the '234 Patent, a copy of which is attached as Exhibit 3.

15. U.S. Patent No. D819,235 (the "'235 Patent"), titled "WOOD-GRAINED POLYMER BOARD," was duly and legally issued by the United States Patent and Trademark Office on May 29, 2018. Tangent is the assignee and owner of all right, title, and interest in the '235 Patent, a copy of which is attached as Exhibit 4.

## RENEW'S CONDUCT

16. RENEW is in the business of offering for sale, selling and distributing plastic lumber products.

17. RENEW makes, uses, offers to sell, sells, and/or imports its wood-alternative polymer lumber in which the wood-grain can been seen throughout the body of the lumber, including, for example, its EVOLVE line of dimensional lumbar (*see* https://www.renewplastics.com/products) (collectively, the "Accused Products").

18. Tangent sent RENEW a letter on May 28, 2026 (the "May Letter") informing RENEW about Tangent's intellectual property, including exemplary Patents-in-Suit. The May Letter included several claim charts demonstrating how RENEW's EVOLVE product was infringing Tangent's intellectual property. The letter informed RENEW that Tangent would enforce its patent rights if RENEW did not cease its infringing activities. The letter provided

RENEW an opportunity to respond and stated that Tangent wished to resolve the issue without litigation.

19. Although RENEW acknowledged receipt of the May Letter on June 4, 2026, RENEW has not ceased its infringing activities.

**GENERAL ALLEGATIONS**

20. RENEW has directly infringed and continues to directly infringe each of the Patents-in-Suit by engaging in acts constituting infringement under 35 U.S.C. §§ 271(a), (b), and/or (c), including but not necessarily limited to one or more of making, using, selling, offering to sell, and inducing and contributing to infringement by others, in this District and elsewhere in the United States.

21. RENEW's acts of infringement have caused damage to Tangent. Tangent is entitled to recover from RENEW the damages sustained by Tangent as a result of RENEW's wrongful acts in an amount subject to proof at trial.

22. RENEW's infringement of the Patents-in-Suit has been and continues to be willful.

23. RENEW has committed and continues to commit acts of infringement despite a high likelihood that its actions constitute infringement, and RENEW knew or should have known that its actions constituted an unjustifiably high risk of infringement.

24. RENEW's infringement of the Patents-in-Suit is causing irreparable harm for which Tangent has no adequate remedy at law unless RENEW is enjoined by this Court. Under 35 U.S.C. § 283, Tangent is entitled to a permanent injunction against further infringement of the Patents-in-Suit.

25. Tangent has identified below at least one claim per patent to demonstrate infringement by the Accused Products. However, the selection of claims and products should not

5

be considered limiting, and additional claims of the Patents-in-Suit and products that are infringed by RENEW will be disclosed in compliance with the Court's rules and schedule. The Accused Products shown below in relation to the claims of the Patents-in-Suit are exemplary only; all colors, versions, and designs of the Accused Products are alleged to infringe the Patents-in-Suit.

### COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,981,350

26. Tangent incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

27. RENEW has infringed and is infringing claims of the '350 Patent, including at least claims 1 and 10, in violation of 35 U.S.C. §§ 271(a), (b), and (c) by manufacturing, using, offering to sell, selling, and/or importing infringing products including, but not limited to, the Accused Products.

28. Claim 1 of the '350 Patent recites:

1. A simulated natural wood-grained polymer board having a first side and a second side spaced apart from the first side, the spacing between the first and second sides defining one of a width or a height of the board, the first and second sides extending along a length direction between a first end and a second end, the first and second ends defining a length of the board, the board comprising:

a first set of polymer layers extending along the length direction and containing a first colorant, a majority of the first set of polymer layers extending along the length of the entire board;

a second set of polymer layers extending along the length direction and containing a second colorant different than the first colorant, a majority of the second set of polymer layers extending along the length of the entire board; and

wherein a plurality of individual layers of the first and second sets of polymer layers alternate within the board and extend along a substantially uninterrupted curvilinear path originating proximate the first side of the board and terminating proximate the second side of the board.

6

29. Claim 10 of the '350 Patent recites:

> 10. A simulated natural wood-grained polymer substrate extending along a first direction, the substrate having a first side and a second side spaced apart from the first side along a second direction different than the first direction, the first and second sides defining a width of the substrate, the first and second sides extending along the first direction, a core of the substrate extending between the first and second sides and along the first direction, the substrate comprising:
>
> a first set of polymer layers extending along the first direction and containing a first colorant, a majority of the first set of polymer layers being substantially continuous along the first direction; and
>
> a second set of polymer layers extending along the first direction and containing a second colorant different than the first colorant, a majority of the second set of polymer layers being substantially continuous along the first direction;
>
> wherein individual layers of the first and second sets of polymer layers alternate within the core of the substrate to form a natural wood-grained appearance throughout the core of the substrate; and
>
> wherein a plurality of the individual layers of one of the first and second sets of polymer layers extend along a substantially uninterrupted curvilinear path in the second direction originating proximate the first side and terminating proximate the second side.

30. Regarding claim 1 of the '350 Patent, the Accused Product is a simulated natural wood-grained polymer board having a first side and a second side spaced apart from the first side, where the spacing between the first and second sides defines a width of the board. The first and second sides extend along a length direction between a first end and a second end, where the first and second ends define a length of the board.

31. The Accused Product includes a first set of polymer layers extending along the length direction and contain a first colorant, with a majority of the first set of polymer layers extending along the length of the entire board. An inspection of the first end and second end of the

7

Accused Product shows that a majority of the first set of polymer layers that begin on the first end extend to the second end.

32. The Accused Product includes a second set of polymer layers extending along the length direction and contain a second colorant different than the first colorant, with a majority of the second set of polymer layers extending along the length of the entire board. An inspection of the first end and second end of the Accused Product shows that a majority of the second set of polymer layers that begin on the first end extend to the second end.

33. The Accused Product includes a plurality of individual layers of the first and second sets of polymer layers that alternate within the board and extend along a substantially uninterrupted curvilinear path originating proximate the first side of the board and terminating proximate the second side of the board. An inspection of either the first end and second end of the Accused Product shows that a plurality of the individual layers of both the first and second set of polymer layers alternate within the board and extend along a substantially uninterrupted curvilinear path that begins proximate the first side and ends proximate the second side of the board.

34. For example, the features of claim 1 of the '350 Patent are shown below in an annotated image of the Accused Product.



35. Regarding claim 10 of the '350 Patent, the Accused Product is a simulated natural wood-grained polymer substrate extending along a first direction, the substrate having a first side and a second side spaced apart from the first side along a second direction different than the first direction, the first and second sides defining a width of the substrate, the first and second sides extending along the first direction, a core of the substrate extending between the first and second sides and along the first direction.

36. The Accused Product includes a first set of polymer layers extending along the first direction and containing a first colorant, a majority of the first set of polymer layers being substantially continuous along the first direction. An inspection of the first and second sides of the Accused Product shows that a majority of the first set of polymer layers are substantially continuous along the first direction.

37. The Accused Product includes a second set of polymer layers extending along the first direction and containing a second colorant different than the first colorant, a majority of the second set of polymer layers being substantially continuous along the first direction. An inspection

9

of the first and second sides of the Accused Product shows that a majority of the second set of polymer layers are substantially continuous along the first direction.

38. The Accused Product includes individual layers of the first and second sets of polymer layers that alternate within the core of the substrate to form a natural wood-grained appearance throughout the core of the substrate. An inspection of either end of the Accused Product shows that individual layers of the first and second set of polymer layers alternate within the board to form a natural wood-grained appearance throughout the core of the board.

39. The Accused Product includes a plurality of individual layers of one of the first and second sets of polymer layers extending along a substantially uninterrupted curvilinear path in the second direction originating proximate the first side and terminating proximate the second side. An inspection of either end of the Accused Product shows that a plurality of the individual layers of one of the first and second set of polymer layers extend along a substantially uninterrupted curvilinear path that begins proximate the first side and ends proximate the second side of the board.

40. For example, the features of claim 10 of the '350 Patent are shown below in an annotated image of the Accused Product.

10



41. RENEW has been aware of and has had actual notice of the '350 Patent and its infringement of the '350 Patent at least as early as May 28, 2026, the date on which Tangent sent it the May Letter. RENEW acknowledged receipt of the May Letter but has not stopped making or selling the Accused Products.

42. By continuing to make, use, sell, offer to sell, and/or import the Accused Products on or after RENEW first had actual notice of Tangent's infringement allegations, RENEW directly infringes and continues to directly infringe at least claims 1 and 10 of the '350 Patent.

43. RENEW sells and offers for sale the Accused Products while being fully aware of the '350 Patent and knowing the Accused Products to be specially made or adapted for infringing the '350 Patent and not to be a staple article or commodity of commerce suitable for substantial non-infringing use.

44. RENEW, with knowledge of the '350 Patent, actively induces infringement of the '350 Patent by at least encouraging and instructing its customers and end users to use and/or sell

the Accused Products in a manner that infringes the '350 Patent, knowing that its actions would induce infringement of the '350 Patent, knowing that infringement of the '350 Patent would take place, intending that infringement take place and in substantial numbers, and resulting in direct infringement of the '350 Patent by its customers and end users of the Accused Products.

45.     Tangent has suffered and continues to suffer damages as a result of RENEW's infringement of the '350 Patent in an amount to be determined at trial. Tangent is entitled to recover damages adequate to compensate for the infringement pursuant to 35 U.S.C. § 284.

46.     RENEW's infringement of the '350 Patent is also causing irreparable harm for which Tangent has no adequate remedy at law unless RENEW is enjoined by this Court. Under 35 U.S.C. § 283, Tangent is entitled to a permanent injunction against further infringement of the '350 Patent.

47.     RENEW has continued with its infringement despite the objectively high likelihood that its actions constitute infringement and RENEW's subjective knowledge of this obvious risk. As RENEW has no good faith belief that it does not infringe the '350 Patent, at a minimum, RENEW's continued infringement of the '350 Patent is willful and deliberate, entitling Tangent to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 12,654,384**

48.     Tangent incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

49.     RENEW has infringed and is infringing claims of the '384 Patent, including at least claims 1, 10, and 19, in violation of 35 U.S.C. §§ 271(a), (b), and (c) by manufacturing, using,

offering to sell, selling, and/or importing infringing products including, but not limited to, the Accused Products.

50.    Claim 1 of the '384 Patent recites:

1. A polymer substrate that simulates natural wood extending along a first direction, the polymer substrate having a first side and a second side spaced apart from the first side along a second direction different than the first direction, the first and the second sides defining a width of the substrate, the first and the second sides extending along the first direction, the substrate comprising:

a first set of polymer layers extending along the first direction and containing a first colorant, a plurality of the first set of polymer layers being substantially continuous along the first direction;

a second set of polymer layers extending along the first direction and containing a second colorant different than the first colorant, a plurality of the second set of polymer layers being substantially continuous along the first direction;

the substrate extending between the first and the second sides and along the first direction, the substrate comprising a wood-grained pattern formed of the first set of polymer layers and the second set of polymer layers,

wherein individual layers of the first and the second set of polymer layers are interspersed within the substrate to form the wood-grained pattern,

wherein a plurality of individual layers of at least one of the first and the second sets of polymer layers extend along a substantially curvilinear path in the second direction originating proximate the first side and terminating proximate the second side; and a cross-section of the substrate exposing the wood-grained pattern.

51.    Claim 10 of the '384 Patent recites:

A polymer substrate that simulates natural wood extending along a first direction, the polymer substrate having a first side and a second side spaced apart from the first side along a second direction different than the first direction, the first and the second sides defining a width of the substrate, the first and the second sides extending along the first direction, the substrate comprising:

13

a first set of polymer layers extending along the first direction and containing a first colorant, a plurality of the first set of polymer layers being substantially continuous along the first direction;

a second set of polymer layers extending along the first direction and containing a second colorant different than the first colorant, a plurality of the second set of polymer layers being substantially continuous along the first direction;

the substrate extending between the first and the second sides and along the first direction, the substrate comprising a wood-grained pattern formed of the first set of polymer layers and the second set of polymer layers,

wherein individual layers of the first and the second set of polymer layers are interspersed within the substrate to form the wood-grained pattern,

wherein a plurality of individual layers of both the first and the second sets of polymer layers extend along a substantially curvilinear path in the second direction originating proximate the first side and terminating proximate the second side; and a cross-section of the substrate exposing the wood-grained pattern.

52. Claim 19 of the '384 Patent recites:

19. A simulated natural wood-grained polymer board extending along a first direction, having a first side and a second side spaced apart from the first side along a second direction different than the first direction, the first and the second sides defining a width of the board, the first and the second sides extending along the first direction, the board comprising:

a first set of polymer layers extending along the first direction and containing a first colorant;

a second set of polymer layers extending along the first direction and containing a second colorant different than the first colorant;

the board extending between the first and the second sides and along the first direction, the board comprising a wood-grained pattern formed of the first set of polymer layers and the second set of polymer layers,

wherein individual layers of the first and the second set of polymer layers are interspersed within the board to form the wood-grained pattern,

wherein a plurality of individual layers of the first set of polymer layers extend along a substantially curvilinear path in the second direction originating proximate the first side and terminating proximate the second side; and a cross-section of the board exposing the wood-grained pattern.

53. Regarding claim 1 of the '384 Patent, the Accused Product is a polymer substrate that simulates natural wood that extends along a first direction. The polymer substrate has a first side and a second side which are spaced apart from each other along a second direction that is different from the first direction. These first and second sides define the width of the substrate and extend along the first direction.

54. The Accused Product includes a first set of polymer layers extending along the first direction and containing a first colorant, a plurality of the first set of polymer layers being substantially continuous along the first direction. An inspection of the first and second sides of the Accused Product shows that a plurality of the first set of polymer layers are substantially continuous along the first direction.

55. The Accused Product includes a second set of polymer layers extending along the first direction and containing a second colorant different than the first colorant, a plurality of the second set of polymer layers being substantially continuous along the first direction. An inspection of the first and second sides of the Accused Product shows that a plurality of the second set of polymer layers are substantially continuous along the first direction.

56. The Accused Product extends between the first and second sides, along the first direction, comprising a wood-grained pattern formed of the first set of polymer layers and the second set of polymer layers. An inspection of a cross-section, cut perpendicular to the first

15

direction, shows that the substrate extending between the first and second sides comprises a wood-grained pattern formed by the first and second sets of polymer layers.

57. The Accused Product includes individual layers of the first and second sets of polymer layers that are interspersed within the substrate to form a wood-grained pattern. An inspection of a cross-section, cut perpendicular to the first direction, shows that individual layers of the first and second set of polymer layers are interspersed within the substrate to form a wood-grained pattern.

58. The Accused Product includes a plurality of individual layers of at least one of the first and second sets of polymer layers extending along a substantially curvilinear path in the second direction originating proximate the first side and terminating proximate the second side. A cross-section of the substrate exposes the wood-grain pattern. An inspection of a cross-section, cut perpendicular to the first direction, shows that a plurality of the individual layers of at least one of the first and second set of polymer layers extend along a substantially curvilinear path that begins proximate the first side and ends proximate the second side of the board. An inspection of this cross-section of the substrate exposes a wood-grain pattern.

59. For example, the features of claim 1 of the '384 Patent are shown below in an annotated image of the Accused Product.



60. Regarding claim 10 of the '384 Patent, the Accused Product is a polymer substrate that simulates natural wood that extends along a first direction. The polymer substrate has a first side and a second side which are spaced apart from each other along a second direction that is different from the first direction. These first and second sides define the width of the substrate and extend along the first direction.

61. The Accused Product includes a first set of polymer layers extending along the first direction and containing a first colorant, a plurality of the first set of polymer layers being substantially continuous along the first direction. An inspection of the first and second sides of the Accused Product shows that a plurality of the first set of polymer layers are substantially continuous along the first direction.

62. The Accused Product includes a second set of polymer layers extending along the first direction and containing a second colorant different than the first colorant, a plurality of the second set of polymer layers being substantially continuous along the first direction. An inspection

of the first and second sides of the Accused Product shows that a plurality of the second set of polymer layers are substantially continuous along the first direction.

63. The Accused Product extends between the first and second sides, along the first direction, comprising a wood-grained pattern formed of the first set of polymer layers and the second set of polymer layers. An inspection of a cross-section, cut perpendicular to the first direction, shows that the substrate extending between the first and second sides comprises a wood-grained pattern formed by the first and second sets of polymer layers.

64. The Accused Product includes individual layers of the first and second sets of polymer layers that are interspersed within the substrate to form a wood-grained pattern. An inspection of a cross-section, cut perpendicular to the first direction, shows that individual layers of the first and second set of polymer layers are interspersed within the substrate to form a wood-grained pattern.

65. The Accused Product includes a plurality of individual layers of both the first and second sets of polymer layers extending along a substantially curvilinear path in the second direction originating proximate the first side and terminating proximate the second side. A cross-section of the substrate exposes the wood-grain pattern. An inspection of a cross-section, cut perpendicular to the first direction, shows that a plurality of the individual layers of both the first and second set of polymer layers extend along a substantially curvilinear path that begins proximate the first side and ends proximate the second side of the board. An inspection of this cross-section of the substrate exposes a wood-grain pattern.

66. For example, the features of claim 10 of the '384 Patent are shown below in an annotated image of the Accused Product.



67. Regarding claim 19 of the '384 Patent, the Accused Product is a simulated natural wood-grained polymer board extending along a first direction, having a first side and a second side spaced apart from the first side along a second direction different from the first direction, the first and second sides defining a width of the board. The first and second sides extend along the first direction.

68. The Accused Product includes a first set of polymer layers extending along the first direction and containing a first colorant. An inspection of the Accused product shows that the first set of polymer layers containing a first colorant extend along the first direction of the board.

69. The Accused Product includes a second set of polymer layers extending along the first direction and containing a second colorant different than the first colorant. An inspection of the Accused Product shows that the second set of polymer layers containing a second colorant extend along the first direction of the board.

70. The Accused Product extends between the first and second sides and along the first direction and comprises a wood-grained pattern formed of the first set of polymer layers and the

19

second set of polymer layers. An inspection of a cross-section, cut perpendicular to the first direction, shows a wood-grained pattern formed from the first and second sets of polymer layers.

71.     The Accused Product includes individual layers of the first and second sets of polymer layers that are interspersed within the board to form the wood-grained pattern. An inspection of a cross-section, cut perpendicular to the first direction, shows a wood-grained pattern formed from the interspersed first and second sets of polymer layers within the board.

72.     The Accused Product includes a plurality of individual layers of the first set of polymer layers extending along a substantially curvilinear path in the second direction originating proximate the first side and terminating proximate the second side such that a cross-section of the board exposes the wood-grained pattern. An inspection of a cross-section, cut perpendicular to the first direction, shows a plurality of individual layers of the first set of polymer layers extending along a substantially curvilinear path in the second direction originating proximate the first side and terminating proximate the second side. An inspection of this cross-section exposes the wood-grained pattern.

73.     For example, the features of claim 19 of the '384 Patent are shown below in an annotated image of the Accused Product.



74.  Upon information and belief, RENEW has had notice of the '384 Patent and its infringement of the '384 Patent at least as early as June 16, 2026, the date on which the '384 Patent issued as a U.S. Patent, and certainly as of the filing and/or service of this complaint.

75.  RENEW sells and offers for sale the Accused Products while being on notice of the '384 Patent and RENEW should have known that the Accused Products were specially made or adapted for infringing the '384 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

76.  RENEW, with knowledge of the '384 Patent, actively induces infringement of the '384 Patent by at least encouraging and instructing its customers and end users to use and/or sell the Accused Products in a manner that infringes the '384 Patent, knowing that its actions would induce infringement of the '384 Patent, knowing that infringement of the '384 Patent would take place, intending that infringement take place and in substantial numbers, and resulting in direct infringement of the '384 Patent by its customers and end users of the Accused Products.

77. Tangent has suffered and continues to suffer damages as a result of RENEW's infringement of the '384 Patent in an amount to be determined at trial. Tangent is entitled to recover damages adequate to compensate for the infringement pursuant to 35 U.S.C. § 284.

78. RENEW's infringement of the '384 Patent is also causing irreparable harm for which Tangent has no adequate remedy at law unless RENEW is enjoined by this Court. Under 35 U.S.C. § 283, Tangent is entitled to a permanent injunction against further infringement of the '350 Patent.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. D819,234

79. Tangent incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

80. RENEW has infringed and is infringing the '234 Patent in violation of 35 U.S.C. §§ 271(a), (b), and (c) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to, the Accused Products.

81. The '234 Patent protects an ornamental design for a wood-grained polymer board. The exemplary depictions below are the Accused Product, as compared to the patented design in the '234 Patent.



| The Accused Product | '234 Patent Fig. 2 |

82. RENEW infringes the '234 Patent because, *inter alia*, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the design of the '234 Patent and the

designs of the Accused Product are substantially the same, the resemblance being such as to deceive such an ordinary observer, inducing them to purchase one supposing it to be the other.

83. RENEW has been aware of and has had notice of the '234 Patent and its infringement of the '234 Patent at least as early as May 28, 2026, the date on which Tangent sent it the May Letter. RENEW acknowledged receipt of the May Letter but has not stopped making or selling the Accused Products.

84. By continuing to make, use, sell, offer to sell, and/or import the Accused Products on or after RENEW first had notice of Tangent's allegations of infringement, RENEW directly infringes and continues to directly infringe the '234 Patent.

85. RENEW sells and offers for sale the Accused Products while being fully aware of the '234 Patent and knowing the Accused Products to be specially made or adapted for infringing the '234 Patent and not to be a staple article or commodity of commerce suitable for substantial non-infringing use.

86. RENEW, with knowledge of the '234 Patent, actively induces infringement of the '234 Patent by at least encouraging and instructing its customers and end users to use and/or sell the Accused Products in a manner that infringes the '234 Patent, knowing that its actions would induce infringement of the '234 Patent, knowing that infringement of the '234 Patent would take place, intending that infringement take place and in substantial numbers, and resulting in direct infringement of the '234 Patent by its customers and end users of the Accused Products.

87. Tangent has suffered and continues to suffer damages as a result of RENEW's infringement of the '234 Patent in an amount to be determined at trial. Tangent is entitled to recover damages adequate to compensate for the infringement, including RENEW's total profits pursuant

to 35 U.S.C. § 289. Tangent is entitled to recover any other damages as appropriate pursuant to 35 U.S.C. § 284.

88.     RENEW's infringement of the '234 Patent is also causing irreparable harm for which Tangent has no adequate remedy at law unless RENEW is enjoined by this Court. Under 35 U.S.C. § 283, Tangent is entitled to a permanent injunction against further infringement of the '234 Patent.

89.     RENEW has continued with its infringement despite the objectively high likelihood that its actions constitute infringement and RENEW's subjective knowledge of this obvious risk. As RENEW has no good faith belief that it does not infringe the '234 Patent, at a minimum, RENEW's continued infringement of the '234 Patent is willful and deliberate, entitling Tangent to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**COUNT IV: INFRINGEMENT OF U.S. PATENT NO. D819,235**

90.     Tangent incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

91.     RENEW has infringed and is infringing the '235 Patent in violation of 35 U.S.C. §§ 271(a), (b), and (c) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to, the Accused Products.

92.     The '235 Patent protects an ornamental design for a wood-grained polymer board. The exemplary depiction below features the Accused Product (EVOLVE in "Charcoal Gray" color and "Wood Grain" texture (*see* https://www.renewplastics.com/order-samples), as compared to the patented design in the '235 Patent. *See* https://www.renewplastics.com/order-samples.

24



**Accused Product** ’235 Patent Fig. 2

93. RENEW infringes the ’235 Patent because, *inter alia*, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the design of the ’235 Patent and the designs of the Accused Product are substantially the same, the resemblance being such as to deceive such an ordinary observer, inducing them to purchase one supposing it to be the other.

94. RENEW has been aware of and has had notice of the ’235 Patent and its infringement of the ’235 Patent at least as early as May 28, 2026, the date on which Tangent sent it the May Letter. RENEW acknowledged receipt of the May Letter but has not stopped making or selling the Accused Products.

95. By continuing to make, use, sell, offer to sell, and/or import the Accused Products on or after RENEW first had notice of Tangent’s allegations of infringement, RENEW directly infringes and continues to directly infringe the ’235 Patent.

96. RENEW sells and offers for sale the Accused Products while being fully aware of the ’235 Patent and knowing the Accused Products to be specially made or adapted for infringing the ’235 Patent and not to be a staple article or commodity of commerce suitable for substantial non-infringing use.

97. RENEW, with knowledge of the '235 Patent, actively induces infringement of the '235 Patent by at least encouraging and instructing its customers and end users to use and/or sell the Accused Products in a manner that infringes the '235 Patent, knowing that its actions would induce infringement of the '235 Patent, knowing that infringement of the '235 Patent would take place, intending that infringement take place and in substantial numbers, and resulting in direct infringement of the '235 Patent by its customers and end users of the Accused Products.

98. Tangent has suffered and continues to suffer damages as a result of RENEW's infringement of the '235 Patent in an amount to be determined at trial. Tangent is entitled to recover damages adequate to compensate for the infringement, including RENEW's total profits pursuant to 35 U.S.C. § 289. Tangent is entitled to recover any other damages as appropriate pursuant to 35 U.S.C. § 284.

99. RENEW's infringement of the '235 Patent is also causing irreparable harm for which Tangent has no adequate remedy at law unless RENEW is enjoined by this Court. Under 35 U.S.C. § 283, Tangent is entitled to a permanent injunction against further infringement of the '235 Patent.

100. RENEW has continued with its infringement despite the objectively high likelihood that its actions constitute infringement and RENEW's subjective knowledge of this obvious risk. As RENEW has no good faith belief that it does not infringe the '235 Patent, at a minimum, RENEW's continued infringement of the '235 Patent is willful and deliberate, entitling Tangent to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## JURY DEMAND

Tangent hereby demands a jury trial on all issues so triable

## PRAYER FOR RELIEF

WHEREFORE, Tangent prays for judgment against RENEW and respectfully requests the following relief:

A.     A judgment that RENEW has infringed and is infringing the Patents-in-Suit;

B.     A permanent injunction against RENEW and its affiliates, subsidiaries, assignees, employees, agents, or anyone acting in privity or concert with any of them, from infringing the Patents-in-Suit, including enjoining the making, offering to sell, selling, using, or importing into the United States products claimed in any of the claims of the Patents-in-Suit; inducing others to infringe any claim of the Patents-in-Suit; or contributing to others infringing any claim of the Patents-in-Suit, until the expiration of the Patents-in-Suit;

C.     A judgment that RENEW's infringement of the Patents-in-Suit was willful and that RENEW's continued infringement of the Patents-in-Suit is willful;

D.     An award of damages adequate to compensate Tangent for RENEW's patent infringement;

E.     An accounting to adequately compensate Tangent for the infringement, including, but not limited to, RENEW's total profit, Tangent's lost profits, and/or a reasonable royalty;

F.     An award of pre-judgment and post-judgment interest at the maximum rate allowed by law;

G.     An award of damages for willful infringement;

27

H.  An order finding that this is an exceptional case and awarding Tangent its costs, expenses, disbursements, and reasonable attorneys' fees related to RENEW's patent infringement under 35 U.S.C. § 285 and all other applicable statutes, rules and common law; and

I.  Such other and further relief, in law or equity, as this Court deems just and proper.


Dated: July 1, 2026

/s/ *Amol Parikh*
Amol Parikh
IL Bar No. 6285077
Attorney for Plaintiff
McDermott Will & Schulte LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606-0029
(312) 373-2000
amparikh@mcdermottlaw.com

Michael Chu
IL Bar No. 6210133
Attorney for Plaintiff
McDermott Will & Schulte LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606-0029
(312) 373-2000
mchu@mcdermottlaw.com

**Of Counsel:**
Connor Larson
IL Bar No. 6346143
Attorney for Plaintiff
McDermott Will & Schulte LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606-0029
(312) 373-2000
clarson@mcdermottlaw.com